UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH DEAN VIGIL,

        Plaintiff,

v.                                               Case No. 10-14401
                                                Honorable Patrick J. Duggan

REGENTS OF THE UNIVERSITY OF
MICHIGAN, EDIE GOLDENBERG,
DON HERZOG, CHRISTINA WHITMAN,
and ANNA KIRKLAND,

        Defendants.
_____/

**<u>OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS</u>**

       This lawsuit arises from Plaintiff's November 2007 dismissal from the University of Michigan's doctoral program after he failed to defend his dissertation within six years of becoming a candidate. In his *pro se* Complaint, filed November 3, 2010, Plaintiff alleges various federal and state law claims against the Regents of the University of Michigan and University of Michigan professors Edie Goldenberg, Don Herzog, Christina Whitman, and Anna Kirkland (collectively "Defendants"). Specifically, Plaintiff asserts the following counts against Defendants: (1) retaliation in violation of his First Amendment rights pursuant to 42 U.S.C. § 1983; (2) violation of his substantive and procedural due process rights pursuant to 42 U.S.C. § 1983; (3) violation of his rights under the Equal Protection Clause pursuant to 42 U.S.C. § 1983; (4) retaliation in violation of his free speech rights under the Michigan Constitution; (5) violation of his due process rights under the Michigan Constitution; (6) violation of his equal protection

rights under the Michigan Constitution; (7) breach of express or implied contract; (8) defamation; (9) tortious interference with contractual or advantageous business relationships; (10) intentional infliction of emotional distress; and (11) race and ethnic discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act.

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed March 25, 2011. After receiving extensions of time, Plaintiff filed a response brief on June 20, 2011, and Defendants filed a reply brief on July 18, 2011. On June 28, 2011, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to Defendants' motion pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court grants Defendants' motion and dismisses with prejudice all of his claims except for his breach of contract claim which is dismissed without prejudice.

## I.     Plaintiff's Allegations

According to his Complaint, Plaintiff began graduate studies in the Department of Political Science at the University of Michigan (hereafter "UofM") in Fall 1991. (Compl. ¶ 12.) During his first year of study, Plaintiff became "concerned about the lack of personal attention and collegiality in the advising process" and "observed that the University did not provide the collaboration with professors, support publication efforts, provide letters of recommendation, present [him] for interviews, or train [him] for 'job talks' as the university did with other students and as promised by the University when recruiting [him]." (*Id*. ¶¶ 15, 16.) Plaintiff alleges that "this problem became acute when

[he] received [doctoral c]andidate status." (*Id.* ¶ 17.)

Plaintiff's primary complaints in this lawsuit relate to Defendants' oversight of his work on his doctoral thesis. He alleges that he would have received his doctorate but for Defendants' failure to "properly administer[] the dissertation process in accordance with its own Guidelines and basic standards of fairness." (Compl. ¶ 39.) Plaintiff complains that, beginning in 2002, he sent a number of drafts of his dissertation to his dissertation committee (which at the time included Professors Herzog, Jonathan Simon, and William Beaney) without substantive reply from anyone except Dr. Beaney. (*Id.* ¶ 47.)

Prior to this time, members of the committee provided letters certifying a time line for Plaintiff's completion of his dissertation to the Metropolitan State College ("MSC") in Denver, Colorado, where Plaintiff was then employed as a tenure track eligible visiting instructor. (*Id.* ¶¶ 33, 48.) Late in 2001, Plaintiff contacted Professor Herzog and asked him to provide a letter to MSC stating that the dissertation was essentially completed; however Professor Herzog declined without explanation. (*Id.* ¶ 49.) Plaintiff claims that he was denied a renewal of his teaching contract at MSC as a result. (*Id.* ¶ 50.)

Plaintiff alleges that he subsequently received an e-mail from Professor Herzog indicating "that someone would accuse Dr. Herzog of making derogatory comments about [Plaintiff] labeling [him] a liar, and other slanderous statements, but that [Plaintiff] should ignore those remarks since they had never been made." (Compl. ¶ 55.) Although Plaintiff fails to allege a specific time when he received this e-mail, it appears that it was sometime around 2002 or 2003. Plaintiff claims that he subsequently received another e-

mail from Professor Herzog "stating for the first time that there were significant problems with the draft [of his dissertation]." (*Id*. ¶ 56.)

Professor Beaney passed away sometime after 2003 and Professor Whitman then joined Plaintiff's dissertation committee. (*Id*. ¶ 60.) Plaintiff claims that he thereafter attempted to obtain substantive feedback concerning his dissertation but received "no collaboration, mentoring, or critique as is required by the University Graduate Faculty Handbook." (*Id*. ¶ 64.) In April 2005, Plaintiff claims that he received an e-mail from Professor Herzog indicating that Plaintiff would not be allowed to defend his dissertation. (*Id*. ¶ 65.)

According to Plaintiff, he "immediately called Professor Simon, who put [him] through an impromptu defense of the dissertation . . . [and] pronounced that he would contact the other committee members that [Plaintiff] had demonstrated a command of the material and explained the theoretical argument and further collaboration was not called for." (*Id*.) Plaintiff also asked for a statement explaining why he would not be allowed to defend his dissertation. (*Id*. ¶ 66.) Plaintiff alleges that, in response, Professor Herzog resigned from the dissertation committee. (*Id*.)

Around this time, Plaintiff "became suspicious that the Department of Political Science had already decided to not let [him] complete [his] degree." (Compl. ¶ 68.) Plaintiff alleges that he has an e-mail "that is sarcastic and asks whether or not they should just let [him] fade away" which "is dated 2005." (*Id*. ¶ 68.) Plaintiff "discovered later" that he had been removed from the list of doctoral candidates– an act which he

believes required "formal action by the Department of Political Science." (*Id*. ¶ 69.)

Plaintiff claims that he made UofM's President and its Board of Regents "aware of the situation" in 2006, but nothing was done. (*Id*. ¶ 76.) In "November[] 2007]", he received correspondence from Professor Goldenberg, who was the Director of Graduate Studies and a professor in the Department of Political Science, informing him that he had been dismissed from the doctoral program for not defending his dissertation within six years of becoming a candidate. (*Id*. ¶ 77.) Plaintiff claims that Professor Goldenberg did not offer him "any due process or appeal procedures." (*Id*.) He further claims that he was never informed of the six-year time constraint for defending one's dissertation and that the dissertation handbook he received from UofM's graduate school did not indicate that there was such a time limit. (*Id*. ¶ 81.)

As indicated earlier, Plaintiff filed this lawsuit on November 3, 2010. Plaintiff alleges violations of his rights to free speech under the United States and Michigan constitutions in his first and fourth counts, respectively. Specifically, Plaintiff claims that, in retaliation for "exercis[ing] his right to free speech through his academic work, discussions with faculty and staff at the University, and with his fellow students," Defendants "placed [him] on 'inactive status'" and effectively dismissed him from UofM. (Compl. ¶¶ 86, 88, 118, 120.)

In his second and fifth counts, Plaintiff alleges that Defendants violated his rights to substantive and procedural due process under the United States Constitution (second count) and Michigan Constitution (fifth count). Plaintiff asserts that "[a]s a student at a

public university, [he] enjoyed a constitutionally protected fundamental right and interest in continuing his education." (*Id.* ¶¶ 94, 128.) He also claims a constitutionally protected fundamental interest in his reputation and "his opportunity to pursue future employment." (*Id.* ¶¶ 96, 129.) Plaintiff asserts that his dismissal was "arbitrary and capricious and motivated by bad faith" and that he "was not afforded an unbiased, careful, and deliberate review process either prior to or following his dismissal from [UofM's doctoral] program" or a "meaningful opportunity to clear his name." (*Id.* ¶¶ 97-100, 130-133.)

Plaintiff asserts violations of his right to equal protection under the United States and Michigan constitutions in his third and sixth counts, respectively. He alleges generally: "Defendants have intentionally singled out and treated Plaintiff less favorably than other similarly situated persons, without any rational basis for that treatment." (*Id.* ¶¶ 109, 142.) In a related claim, Plaintiff asserts that Defendants treated him differently than similarly situated students because of his race and ethnicity in violation of Michigan's Elliott-Larsen Civil Rights Act. (*Id.* ¶ 178.)

In his seventh and tenth claims, respectively, Plaintiff also generally alleges that he had an express or implied contract with UofM that Defendants breached (*id.* ¶ 149, 151) and that Defendants engaged in conduct that constituted intentional infliction of emotional distress. (*Id.* ¶¶ 171-173.) Plaintiff asserts a defamation claim against Defendants (claim eight) based on Defendants purported report and publication to third parties that his graduate school performance "was woefully inadequate, that he was incapable of producing a defensible dissertation, and that he was emotionally unstable."

(*Id.* ¶ 154.) Lastly, he alleges that he had a contract or advantageous business relationship or expectancies with multiple universities of which Defendants were aware and that they "intentionally, improperly, and without justification" interfered with those relationships

or expectancies. (*Id.* ¶¶ 165-167.)

## II.     Applicable Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, – U.S. – , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *Ziegler v. IBP Hog*

*Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).  Even so, "the pleading must contain more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965.  A plaintiff has the duty to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Id.*  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, – U.S. – , 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

Compared to formal pleadings drafted by lawyers, a generally less stringent standard is applied when construing the allegations pleaded in a pro se complaint.  *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972).  Even so, pro se plaintiffs must still provide more than bare assertions of legal conclusions.  *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

## III.     Defendants' Arguments in Support of Their Motion

Defendants assert several reasons why they believe Plaintiff's claims are subject to dismissal. Defendants first argue that all of Plaintiff's claims, except his breach of contract claim, are barred by the applicable statute of limitations. Next, Defendants assert that Plaintiff's § 1983 claims and state law claims against UofM and the individual defendants in their official capacities are barred by Eleventh Amendment immunity. Third, Defendants argue that Plaintiff's claims brought pursuant to the Michigan Constitution must be dismissed because Michigan has no general statute that provides a damages remedy for violations of individuals rights. (Defs.' Mot. at 6, citing *Smith v. Dep't of Public Health*, 428 Mich. 540, 644, 410 N.W.2d 749 (1987) (Boyle, J., concurring).)

In addition, Defendants contend that Defendants are protected from liability for Plaintiff's § 1983 claims pursuant to the doctrine of qualified immunity. Defendants argue that "the Complaint is devoid of any factual allegation that the individual defendants engaged in any activity that a reasonable person would determine to be a violation of law." (Defs.' Mot. at 8.) Defendants seek dismissal of Plaintiff's due process claims, arguing that Plaintiff fails to identify a constitutionally protected interest to which any substantive or procedural due process guarantees attached. They argue that Plaintiff's federal and state constitutional claims, defamation, tortious interference, and intentional infliction of emotional distress claims against UofM based on alleged *respondeat superior* and/or agency theory must be dismissed for failure to state a claim

9

upon which relief may be granted. The only claim not challenged by Defendants is Plaintiff's breach of contract claim. However, they ask the Court to decline supplemental jurisdiction over this claim once his remaining claims are dismissed.

**IV. Analysis**

In Michigan, the limitations period for a defamation action is one year (Mich. Comp. Laws § 600.5805(9)); the limitations period for personal injury claims is three years (Mich. Comp. Laws § 600.5805(10)); and the limitations period for breach of contract claims is six years (Mich. Comp. Laws § 600.5807(8)). The statute of limitations period applicable to personal injury claims applies to claims brought pursuant to the Elliott-Larsen Civil Rights Act, *Kovats v. Hi-Lex Corp.*, 52 F. App'x 768, 700 (6th Cir. 2002) (citing *Timko v. Oakwood Custom Coating, Inc.*, 244 Mich. App. 234, 625 N.W.2d 101, 104 (2001)), and to federal actions brought pursuant to § 1983. *Wilson v. Garcia*, 471 U.S. 261, 276-80, 105 S. Ct. 1938, 1947-50 (1985) (holding that federal courts must apply the state statute of limitations for personal injury claims in all § 1983 cases.); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986).

Under Michigan law, "[a] plaintiff's cause of action for a tortious injury accrues when all the elements of the cause of action, including the element of damage, have occurred and can be alleged in a proper complaint." *Travelers Ins. Co. v. Guardian Alarm Co. of Mich.*, 231 Mich. App. 473, 480, 586 N.W.2d 760 (1998) (citing *Stephens v. Dixon*, 449 Mich. 531, 539, 536 N.W.2d 755 (1995)); *see also Connelly v. Paul Ruddy's Equipment Repair & Service Co.*, 388 Mich. 146, 150, 200 N.W.2d 70, 72 (1972). This

standard applies to claims under the Elliott-Larsen Civil Rights Act as well. *See Garg v. Macomb County Community Mental Health Servs.*, 472 Mich. 263, 284, 696 N.W.2d 646, 659 (2005). For contract actions, the limitations period generally begins to run on the date of the breach. *Harris v. City of Allen Park*, 193 Mich. App. 103, 106, 483 N.W.2d 434, 436 (1992) (citing *In re Easterbrook Estate*, 114 Mich. App. 739, 748, 319 N.W.2d 655 (1982)).

Federal law governs the question of when the limitations period for a § 1983 claim begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). In *Sevier*, the Sixth Circuit held that the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Id*. at 273. In determining when the cause of action accrues in a § 1983 action, the Sixth Circuit has advised court to "look[] to what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991) (citing *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir.1989)).

This Court finds that Plaintiff's claims alleging tortious conduct and his claims alleging violations of his federal and state constitutional rights and rights under the Elliott-Larsen Civil Rights Act are barred by the applicable statutes of limitations. The Court therefore finds it unnecessary to address Defendants' alternative arguments in support of their motion to dismiss.

The essence of Plaintiff's complaint in these claims, except his defamation claim,

is that Defendants did not properly administer the dissertation process (providing him insufficient collaboration, support, and training) and that he was removed from the doctoral program due to his resulting inability to complete his dissertation within six years. Plaintiff states in his Complaint, however, that he became aware of the deficiency in the advisement process soon after he received doctoral candidate status, at least by 2002. (*See, e.g.,* Compl. ¶¶ 15-17, 47-53.) Further, in 2005, he was informed that he would not be allowed to defend his dissertation. (*Id.* ¶ 65.) In the same year, he received an e-mail suggesting "that the Department of Political Science had already decided to not let [him] complete [his] degree" and discovered that he had been "removed from the list of Ph.D. candidates." (*Id.* ¶¶ 68-69.) Finally, it was in late 2001 that Professor Herzog refused to write a letter stating that the dissertation was essentially completed which Plaintiff claims led to the denial of the renewal of his teaching contract at MSC. (*Id.* ¶¶ 49-50.) Plaintiff, however, did not file this lawsuit until November 2010.

Plaintiff's defamation claim is based on statements to third parties concerning his performance in the graduate school and his mental stability. (*See* Compl. ¶ 154.) As Defendants point out, Plaintiff's Complaint is devoid of specific allegations of defamatory conduct and certainly none occurring within the twelve months preceding the filing of this lawsuit. Thus even if his claim was not time-barred, it would be barred for failure to state a claim upon which relief could be granted.

The only claim not barred by the applicable statute of limitations is Plaintiff's breach of contract claim. However, the Supreme Court has advised that when all federal

claims are resolved in a federal court action alleging federal and state claims, a district court should dismiss the state court claims without prejudice. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988). The Court believes that it is appropriate to do so in this.

## V.  Conclusion

For the reasons set forth above, the Court agrees with Defendants that Plaintiff's claims, except his breach of contract claim, are time-barred. Those claims (Counts 1-6 and 8-11) are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining breach of contract claim (Count 7) and dismisses that claim without prejudice.

Accordingly,

**IT IS ORDERED**, that Defendants' motion to dismiss is **GRANTED**.

Date:  July 28, 2011         s/PATRICK J. DUGGAN
                             UNITED STATES DISTRICT JUDGE

Copies to:
Joseph Dean Vigil
2850 South Hobart Way
Denver, CO   80227

Donica Thomas Varner, Esq.